# James Gavigan *v.* The Atlantic Refining Company, Appellant.

*Action—Trespass—Cause of action.*

Whatever injury is inflicted by one person upon another creates a right of action in the injured person for such damages as he can prove he has sustained by reason of the injury; but for such injury, the right of action is vested in the person injured. A man may not recover for the injury and inconvenience inflicted on the personal comfort of his wife and family.

*Nuisance—Oil refinery—Cause of action.*

The erecting, keeping and maintaining an oil refinery establishment in a thickly populated part of a city will give rise to a cause of action if the noxious vapors and offensive smells are proven to be to the prejudice of the health and comfort of a particular citizen.

*Negligence—Domestic relations—Personal injuries—Cause of action.*

For the injury to the person and health of a married woman she has a right of action which is properly brought by her, joined by her husband, and such damages as she may recover belong to her and not to her husband.

For direct personal injury to the wife or child the father has no right of action. That right is vested in the person corporeally injured.

*Charge of court—Negligence—Measure of damages.*

In an action for injury inflicted upon a man in the enjoyment of his prop-

erty by reason of a neighboring nuisance, it was error for the trial judge to charge the jury that the action was brought "on account of injuries inflicted upon plaintiff and his family." The plaintiff did not and could not declare for injury to the health of any member of his family. General instructions throughout the charge as to the effect of injuries upon the health of plaintiff's wife, daughter and family, were also erroneous.

Argued Jan. 9, 1897. Appeal, No. 30, Jan. T., 1897, by defendant, from judgment of C. P. Lackawanna Co., March T., 1894, No. 637, on verdict for plaintiff. Before Rice, P. J., Willard, Wickham, Beaver, Reeder, Orlady and Smith, JJ. Reversed.

Trespass for maintaining a nuisance. Before Edwards, J.

The facts sufficiently appear from the charge of the court below, which was as as follows :

[The plaintiff in this case, James Gavigan, has brought an action against the Atlantic Refining Company, the defendant, to recover damages for injuries alleged by him to be inflicted upon him in the enjoyment of his property, and also on account of injuries said to be inflicted upon his health, and that of his family, and of the physical discomfort that he has suffered on account of the proximity of the defendant's plant to his property, and on account of the manner in which this plant is conducted.] [1] That is substantially the claim of the plaintiff in this case. You will, of course, come to the conclusion that a case of this kind is of considerable importance, not only to the plaintiff and the defendant in this suit, but as a matter of ascertaining not only what the law is, but what the relative rights of people are, and property holders, in circumstances situated such as the plaintiff and the defendant are.

You have undoubtedly formed an idea as to the relative positions of the property of the plaintiff and defendant in this case. You have seen the map, and you have heard the testimony of the witnesses. The location of the plaintiff's property has been described to you in relation to the location of the defendant's property. It is an undisputed fact in the case that the plaintiff acquired his property some fourteen years ago, that he owns it himself, and that he has lived upon it from the time he purchased it up to the time of the beginning of this suit and up to the present day.

It seems that eight or nine years ago the defendant in this case, not probably under the name in which it is sued here now, acquired several lots in the vicinity of the plaintiff's property and proceeded to erect what is commonly termed in this case as an oil plant, or a plant for the storage, receipt and distribution of oil to and through the trade. I need not go over to you the details as to the manner in which this plant was constructed nor as to the manner in which the defendant has conducted the business which has been carried on. You will notice in considering the testimony on behalf of the plaintiff that it was not clear as to the actual business that was carried on on the defendant's property. There was only one witness who said anything as to what he had seen inside of the fence or on the defendant's property. On the defendant's side you have, if it is to be believed, a full and careful description, not only of the plant in its construction, but also of the nature of the business that has been carried on there from the time it was constructed up to the time of the bringing of this suit, as well as up to the time of trial. You will understand that one of the rules in regard to the credibility of witnesses is that a witness, conceding that he is honest, conceding now that all witnesses are honest in what they say, that the witness who has the best opportunity of observing the facts about which he is testifying, is the witness whose testimony should have the greater weight in regard to that fact. The reason that I mention that rule to you now is because it seems from the testimony in this case that the only clear, definite and full testimony as to the construction of this plant and as to the conduct of the business that is carried on there, and the nature of the business that is carried on there, has been received from the defendant's side of the case. [There may have been some doubt in your minds when the plaintiff's case was through, as to whether the defendant was manufacturing oil upon these premises; but I apprehend, although it is a matter for you entirely, that after hearing the defendant's testimony, the positive testimony of these several witnesses that have been sworn in regard to the plant, its nature, its construction, and the business that has been carried on there, that there is no manufacturing of oil being carried on upon these premises; that while they have a great many different kinds of oil stored in these several tanks, that whatever they have there they receive in

tanks from the oil regions over the railroad, this oil that they so receive is pumped into the receptacles known as tanks, and then carried into barrels and sold to the trade. Outside of the different kinds of prepared and refined oil that they deal in, they also deal in greases, which come in barrels and in boxes or cases. While it is for you, from all the evidence in the case, to find out the nature of the business that is carried on there, and the manner in which it is carried on, still I say to you that from the testimony in the case, in my opinion, the only clear and intelligent description we have had of the construction of the plant and of the nature of this business, has been received from the witnesses that have been sworn on behalf of the defense.] [2]

[The important question in the case is, what are the relative rights of the plaintiff and the defendant? The plaintiff bought his property fourteen years ago, and he occupied it, and he has a right to the comforts of his home, to the use and enjoyment of his property, without suffering injury to his health or actual physical discomfort to himself and to his family.] [7] We may also say that the defendant, from the testimony of the case, had a right to buy this property in the place in which they bought it, to erect upon it this plant to store oil there, and to sell it to the trade. I do not think there is any question to be submitted to you, gentlemen of the jury, as to whether the defendant is or is not rightfully there conducting this business. That is not the question. The defendant may be there rightfully and may be carrying on a lawful and legitimate business and in a legitimate way, but the question is, does he so conduct his business or is his business of such a nature that he inflicts physical injury and causes physical discomfort to the plaintiff in his use of his property?

Now, you have heard the counsel argue, and I believe they are pretty near in their views as to the law which would govern this case. You have to take into consideration that this property is in a populous city, and that there are certain discomforts and certain inconveniences that persons owning property and residing in a city must expect. It may be that one has a house in a pleasant part of the city and that next door to him is built a livery stable. A good many people would not like that, it would annoy them, their taste would be disturbed, their per-

sonal comfort or sentimental comfort, call it what you will, would suffer. Or it may be that next to a very nice residence occupied by you or by somebody else, a common restaurant or common saloon might be placed, or even something that would be more uncomfortable than that, we will say a distillery or brewery, still the mere fact that a livery stable or a distillery, or brewery, or a restaurant is carried on and is either built or occupied, after you acquired your property, next door to you, however disagreeable it might be, affords no ground of action and there is no legal redress, because people living in a city and building and occupying their own houses must expect such industries and such business as are generally to be found in cities, especially if the cities are populous. [At the same time if my neighbor carries on a livery stable or brewery or distillery and carries it on in such a manner, although it may be the best manner in which he can carry it on, but he still actually inflicts injury upon my health or upon my family's health, and causes actual physical discomfort, he would still be liable for whatever injury I would suffer;] [8] but you must not charge such injury to a defendant in a case of this nature, if it is common to all the neighborhood.

In the neighborhood of this plant there are other plants, there are other industries, and smoke ascends from the stacks of these different plants, this as well as others, and that smoke intermingles in the air, and of course it impregnates the air with noxious gases to a lesser or greater extent; those things are common inconveniences that everybody suffers from. The traveler on the highway, the man who only makes an occasional visit there, and the people for four or five or half a dozen blocks away, would suffer that discomfort, one just as well as the other. Now, the public that suffers discomfort of that nature are not entitled to recover in a court of law, because individuals must give way to each other where their relative rights are such that everybody must have his right to prosecute his own business in a proper way. You will understand that whatever discomfort this plaintiff has suffered, or whatever annoyance or inconvenience he has suffered in common with all the people of that section of the city on account of the smoke ascending from the stack, or on account of the gases or odors that come from the plant and mingle with the air and scatter all over, and cause

inconvenience and discomfort to everybody that passes that way, that he is not to recover on that account unless he shows an actual and a peculiar injury to himself and to his family. [I do not want you to understand that because the cause of the injury to the plaintiff, provided he has suffered any injury, is of a general character, that he is not therefore entitled to recover, because it may be that a business is of such a character as to influence a large circle and a great many people; nevertheless, the law is that if the man who owns the property in the immediate vicinity has suffered an actual, substantial injury peculiar to himself and his own property, he would be entitled to recover.] [3] I think I have told you enough in that direction, and that is the reason that I have considered this case important on account of the fact that may be your verdict will establish to a great extent the relative rights of persons under the circumstances of the plaintiff and defendant in this case.

[Now, has the plaintiff been injured? Has he received substantial, actual injury? Has the proximity of this plant and the business that has been carried on there caused him actual physical discomfort in the enjoyment of his home, either to him or to his family?] [9] There was some evidence received in the early part of the case showing the effect the proximity of this plant had upon the market value of the plaintiff's property. That evidence was stricken out because it has no place in the consideration of this case. So you will discard from your minds entirely all the testimony that you have heard from the witnesses on the stand in regard to the effect that the erection of this plant and the carrying on of the business has had upon the market value of the plaintiff's property. The only way in which he could show an injury to the real estate would have been by showing a loss of rental value, that is, that he would receive so much when the plant was not there and so much less when the plant was there on account of the plant being there. Or in the destruction of his crops, if he had any; that before the plant was put there his crops netted him so much money per annum, but after the plant was put there it only netted him so much. That is the evidence that is proper in a case of this kind. There is no evidence of that kind, because the plaintiff occupied his own property, and there was no rental value to be considered, and second, there was no evidence whatever as to whether he

had anything planted there. So you see that question is entirely out of the case ; and the reason I mention it now, although you heard the motion by which it was stricken out, is that it may have no place in your consideration of this case when you are arriving at a verdict.

[The contention of the plaintiff is—at least one of them—that the manner in which this business was carried on by the defendant was such as to cause a large quantity of oil to escape into the ground and to percolate through the ground down to Roche Court, through those intervening lots, and into the soil of the plaintiff's property. There has been considerable testimony in regard to that fact. The reason why that is evidence is not because, even if you find such to be the fact, it has injured the soil, because there is no evidence as to whether the impregnation of the soil with oil has injured the plaintiff at all, but whether the impregnation of the soil, if you find such to be the fact, has caused the plaintiff actual physical discomfort and has had an injurious effect upon his health and upon the health of the family.] [4]

First, did the oil percolate from the distance that is shown on the map and has been testified to by the witnesses from the land of the defendant through the lots that I have mentioned to you and through Roche Court and on to the property of the plaintiff and into his cellar? Now, is that a fact? You have to consider a good deal of evidence in arriving at a conclusion upon that one fact alone. You have the testimony of the people who built the sewer, and you have the testimony of the inspectors of the sewer, and they say that when the Poplar street sewer was built and afterwards when the Roche Court sewer was built that there was found upon the surface of the water in the ditches a scum indicating the presence of oil. Some of the witnesses say that the scum was light, others say that it was thick enough for them to detect it as oil, and one or two witnesses testify that the ground around the ditch and in the ditch was saturated with oil. There is some contradiction on that question, even in the testimony of the witnesses themselves. You find the foreman of the men who did the work on Roche Court, who did the sewer work, saying that there was no oil, that he was there ten hours each day, but that there was no oil on Roche Court. Now, of course, there is a dispute even in the testimony of witnesses as to that

fact. It is your duty to take the testimony of the witnesses on that fact, as well as on the others, harmonize it if you can, and if you cannot harmonize it, then believe that which you consider to be the truth. That is the privilege of a jury, to decide what witnesses they believe and what witnesses they do not believe, and what weight they give to the testimony of any witness that comes upon the stand. Then, after considering the testimony of the witnesses on that point, you have a right to take into consideration the testimony of the witnesses who have described to you the manner in which the defendant company have carried on their work from 1887 or 1888 up to the time of the bringing of this suit, which was in March, 1894. They have described to you in detail the manner, and two or three of them have told you that it was impossible—of course, they are giving you the facts as well—for a sufficient quantity of oil to leak so as to get into the ground and saturate the ground, and to get there in sufficient quantities to allow it to percolate through the intervening lots to Roche Court and to the property of the plaintiff. You see that also bears upon the question whether as a matter of fact the oil did percolate in the manner the plaintiff would want you to infer and believe.

There is considerable testimony as to the manner in which this work was conducted on the defendant's plant. You have the testimony as to the spilling of a barrel of lard, and as to the manner the oil was taken from the tanks, and as to the incidental dripping from the valves. You have all that. But if the testimony of the defendant's witnesses is correct as to the greatest quantity of oil that might possibly escape during the six years before the beginning of this suit, then it would be for you, gentlemen, to come to a conclusion from that fact and from all the other testimony in the case whether it was possible for a sufficient quantity of oil to descend through the ground and percolate in the manner that some of the witnesses have described, and to which I have called your attention. [If you find that fact in the negative, that the oil did not as a matter of fact percolate through the ground from the defendant's plant, then of course you will eliminate it out of the consideration of this case. But if you find that it did percolate from the defendant's plant through the ground and on to the plaintiff's lot, that fact alone would not be sufficient to entitle the plaintiff to a ver-

dict, but what effect did it have upon the plaintiff and upon his health, and upon the health of his family, and upon his physical comfort.] [10]

The plaintiff has said, and so has his wife, that there was a strong odor of gas and oil, or of gasy, oily matter in the cellar, and they want you to take that in connection with the testimony as to the saturation of the ground and the percolation of the oil—they want you to take that as the basis of an inference that the odor in the cellar was on account of the saturation of the ground with the oil that came from the defendant's plant. Now, is that true? Did it come into the cellar so the odor that he detected there and Mrs. Gavigan detected there, was the odor of oil that came there in that manner. [They say to you, as far as they are able to judge, and their testimony is for you, that it was the smell of oil, but they also say to you that they kept their provisions in the same cellar. That is a fact for you to consider as to the view that these people took of that odor, whatever it was, that was in the cellar, and as to the effect it had upon their comfort, in their enjoyment of their right and their privileges; that is a fact for your consideration.

Then, again, you have the testimony of Mr. Gavigan and his wife and his daughter in regard to the effect upon their health. Now, that effect must be injurious to the health before the plaintiff would be entitled to any consideration on that ground. If a person suffers loss of appetite from an offensive odor, that might and does affect one's health; but you have seen the man upon the stand, you have seen the wife, and you have heard their testimony as to their physical condition at that time and now. Of course there is no evidence here that any physicians were called to attend this family. There is no evidence that any money was expended in the purchase of medicine, or in the employment of professional gentlemen to attend them. There is no evidence here of loss of work on the part of the plaintiff himself, although there is some evidence that one of the daughters, I think, was sick for about a week, whether it was on account of this odor around the premises or not, I do not know; I leave you to gather that fact from the evidence in the case. Now, is that correct? Did the plaintiff and his family suffer in their health? Do you find that from the evidence? You have also heard the testimony in regard to the physicial discomfort

that they suffered in the enjoyment of their own home; that the odors that came from the defendant's plant were so offensive, so noxious, so thick and strong as to drive them in the summer from their porches into the house, and to compel them to close the doors and windows.

Is that a fact? If you should find that to be a fact, that is such an inference of injury to the physical comfort of the plaintiff as would entitle him to some damage at your hands.] [11] But you must find that such is the fact, and that that physical discomfort was caused by the odor and the smell and the smoke that came from the plaintiff's plant, and not from any other source.

Now, I do not propose to go over all the testimony. A large number of witnesses on the side of the plaintiff have testified to the offensive character of the odor in the immediate neighborhood of this plant and of the plaintiff's property. A large number of witnesses on the side of the defense say there is no such offensive odor; that they have been around there, and the men immediately connected with the work, they have been most of the time in there, and they have discovered nothing of the kind, and there is positively nothing of the kind around there. People who have traveled around there have been on the witness stand, and they say that while they discovered the smell of oil, still it is not offensive, and it is not sufficient to affect the health of the people in the immediate neighborhood. Of course it may not be desirable, but that is not the question, because it must relate to the injury to the plaintiff and his family, as I have already described to you.

Now, which of these witnesses are correct? Their evidence is for you, gentlemen of the jury, and you must consider it in the light of all the facts and circumstances surrounding this case.

I think I have gone now about as much over the testimony as I have the time to, and as is necessary in the disposition of this case. Consider this case in an intelligent manner. If this man has been injured in the manner that he has described, and that injury is traceable to the plant of this defendant and to the manner in which they have conducted it, then he would be entitled to a verdict at your hands. On the other hand, if he has not suffered actual physical discomfort and has not been

injured in his health, or his family have not suffered in the same manner, then your verdict should be for the defendant. If you find a verdict for the defendant you simply say, we find for the defendant. If you find a verdict for the plaintiff you say, we find for the plaintiff in such a sum, naming it; and that sum, whatever it might be, in case you find a verdict for the plaintiff, must be such as twelve reasonable men would have a right to give in good conscience in a case of this nature.

I have been asked to charge you by the defendant on certain points of law, which I will now proceed to do:

1. That if the jury find from all the evidence in the case that the plaintiff has received no bodily injury or physical discomfort from the storage of oil in the defendant's plant, the plaintiff cannot recover.

Answer of the Court: If it has not affected his health or that of his family, or caused him substantial physical discomfort, he cannot recover. Thus qualified the point is affirmed. [5]

2. That if the jury find that the plaintiff has simply been annoyed, and has not been injured in his health, and such annoyance or inconvenience is in common with all the other neighbors in the vicinity of the plant, he has no right of action, and the verdict should be for the defendant.

Answer of the Court: I affirm this point.

3. That upon the whole evidence the plaintiff is not entitled to recover a verdict.

Answer of the Court: Of course I cannot affirm that, because I have left it to you as a question of fact. For that reason that point is refused. [6]

The counsel for the plaintiff and for the defendant except to the charge of the court, and to the answers to the points, and request that the same may be reduced to writing and filed.

The jury comes into court for further instructions.

By the Court: What instructions do you want, gentlemen, in regard to what part of the case?

By a Juror: As to the question of consideration of the discomfort that this man might sustain, and his family, from not being able to sit on his porch, aside from any physical injury that they might have sustained, as to the discomfort that they have sustained, and not being able to enjoy all the privileges of their home. We did not understand thoroughly the judge's charge in relation to that.

By the Court: What is the difficulty with that part of the case? What information did you want?

By a Juror: The jury understood, some of them, that you charged us directly on that point; others understood differently.

By the Court: I charged you that if, on account of this plant of the defendant, the business that they carried on there, and the manner in which they carried on the business, injury was done to the plaintiff in the enjoyment of his property, causing actual physical discomfort, that you would have a right to take that into consideration in arriving at your verdict. I cautioned the jury at the same time that it was not a fancied discomfort, not whether it was a disagreeable matter simply, living on the next property to an oil storage plant, but whether the presence of the plant and the offensive odor coming from it were such as to cause actual physical discomfort to the plaintiff and his family. Now, if such was the case, and that discomfort was attributable to this plant and the manner in which the business was carried on, he would be entitled to compensation for that discomfort so inflicted by the defendant.

Verdict for plaintiff for $470.84. Defendant appealed.

*Errors assigned* were (1–4) portions of the judge's charge, reciting same; (5, 6) refusing defendant's first and third points, reciting same; (7–11) portions of the judge's charge, reciting same.

*W. W. Watson*, with him *W. S. Diehl*, for appellant.—The appellate court will reverse the court below when it appears that the evidence was not sufficient to sustain the verdict: Burr v. Kase, 168 Pa. 81.

When a defendant is engaged in a lawful business, in order to sustain an action against him for an injury resulting therefrom, the injury must be shown to have been real and substantial. Not a trifling annoyance or injury, such as is necessarily incident to the business complained of: Price v. Grantz, 118 Pa. 402; Huckenstine's Appeal, 70 Pa. 102.

The rule of law is that one cannot be held as a tort feasor for acts which are ordinarily harmless: Greenland v. Chaplain, 5 Exchequer, 243. If the husband bring an action to recover for an injury to his wife, he must so declare and then he can re-

cover only the moneys he has expended or become liable to pay for the medical care and attendance upon his wife and for the loss of her services while unable to attend to her domestic duties: Kelley v. Mayberry Township, 154 Pa. 440.

Until a means is discovered to prevent smoke and odor we apprehend that no such principle as is attempted to be enforced by the plaintiff in this case will be sustained by this learned court: Coal Co. v. Coal & Navigation Co., 50 Pa. 91; Gold v. Phila., 115 Pa. 184.

*I. H. Burns,* with him *M. J. Donahoe* and *O'Brien & Kelley,* for appellee.—Is the plaintiff entitled, under the law, to maintain this action? Upon this point there seems to be abundant authority both in our own and the English courts: Gas Co. v. Murphy, 39 Pa. 257.

As to sickness caused by noxious odors and vapors, see the very exhaustive opinion by Judge Endlich in Evans v. Fertilizing Co., 160 Pa. 209, affirmed by the Supreme Court: Coal Co. v. Sanderson, 113 Pa. 126; Robb v. Carnegie Bros. & Co., 145 Pa. 324; Cleveland v. Gas Light Co., 20 N. J. Eq. 201; Meigs v. Lister, 23 N. J. Eq. 199; Campbell v. Seaman, 63 N. Y. 568; Wood on Nuisance (3 ed)., sec. 534.

OPINION BY WILLARD, J., February 16, 1897:

This was an action in the court below to recover damages from the appellant for injuries resulting from erecting, keeping and maintaining an oil refining establishment in a thickly populated part of the city of Scranton. The appellee alleged in his declaration that the manufacture and storage of oil in said establishment created unwholesome gases permeating the atmosphere in the vicinity with noxious vapors and offensive smells to the prejudice of the health and comfort of the plaintiff; that the leakage from the defendant's establishment also permeated the soil in the vicinity of the plaintiff's house, thereby creating noxious and unwholesome gases to the prejudice of his health and comfort. He also alleged injury to the premises where he lived and which he owned, by reason of the manner in which the appellant conducted the business in and about his oil refinery. The court properly withdrew from the consideration of the jury any question of damage to the appellee's premises, as the evidence offered proved no damage to the premises

that could be properly estimated by a jury. This question having been eliminated from the case, the issue was narrowed, under the pleadings, to the question of injury to the appellee's health and comfort, and had it been confined to the appellee there would have been no error in the disposition of the case.

We understand the law to be settled in Pennsylvania that whatever injury is inflicted by one person upon another creates a right of action in the injured person for such damage as he can prove he has sustained by reason of the injury; but for such injury, the right of action is vested in the person injured; that for an injury to the person and health of a married woman she has a right of action which is properly brought by her, joined by her husband, and such damages as she may recover belong to her and not to her husband. So, if the health of the daughter of the appellee was impaired by gases, vapors and smells from the appellant's refinery, the daughter, by her next friend, would have a right of action, and could recover damages therefor. It is true that a father can bring an action in his own name for medical attendance and nursing of his child, also for the loss of his child's services, and in case of injury to his wife he can also recover for the loss of her services, for medical attendance, medicines and nursing during her illness caused by the injury. For a direct and incidental loss to the husband and father, he can recover, but nothing beyond. For the direct personal injury to wife or child, the father has no right of action. That right is vested in the person corporeally injured: Shearman & Redfield on Negligence, sec. 763; Thompson on Negligence, 1241; Penna. R. R. Co. v. Kelly, 31 Pa. 372; King v. Thompson et Ux., 87 Pa. 365; Kelley v. Mayberry Township, 154 Pa. 440.

In this case the suit was brought by a husband and father for injury to his health, and under the pleadings he made no claim for any loss of service, medical attendance, money expended for nurses, or for medicines furnished to his wife or children. As before stated the question was narrowed down to alleged damage to the appellee affecting his health and comfort.

In his charge the learned trial judge at the outset instructed the jury that the action was brought by James Gavigan against the appellant " to recover damages for injuries alleged by him to be inflicted upon him in the enjoyment of his property, and also on account of injuries said to be inflicted upon his health

and that of his family." The appellee did not declare for injury to the health of any member of his family, and the pleader doubtless saw the obstacle to the proof of such an averment if made.

This statement of the cause of action was followed by instructions throughout the charge as to the effect of the odors and gases upon the health of the plaintiff's wife, daughter and family. The plaintiff's family consisted of his wife and three children. Had the trial judge commented upon the effect of the gases and smells upon the appellee's family as incidentally depriving him of the comfort of their society, it would perhaps have done the defendant no harm. But the direct injury to the health of the wife and each member of the family was left to the jury as an element of damage in arriving at their verdict, the proportions thereof being, of course, matter of conjecture. The evidence shows that the wife and daughter were the principal sufferers. Under the charge, the jury was warranted in considering the injury to each member of the family (according to the evidence) in estimating the amount of damages.

Every dollar that the appellee recovered for direct injury to his wife or children was erroneously recovered, as he had no right of action therefor.

If the theory adopted by the learned trial judge is to be accepted, then it follows that the injured members of the appellee's family would be deprived of their right of action, for a rule that would allow a father and each member of his family to recover for the same cause of action, would be contrary to law and reason.

The verdict and judgment in this case cannot estop the appellee's wife, or daughter, or any other member of his family from a right of action for any injury to the health of any member of the family unlawfully caused by the act of the appellant. The right to sue for such injury is vested in them alone and is absolutely unaffected by this action on the part of the husband and parent.

For this error in the charge of the court as to the correct measure of damages, the judgment must be reversed. The first, fourth, fifth, ninth and tenth assignments of error are sustained, the second, third, sixth, seventh and eighth are overruled; the judgment is reversed and a venire facias de novo awarded.